**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THOMAS DONALD ELLIS,        :
                        :
            Plaintiff,      :    Civil No. 04-6118 (JLL)
                        :
        v.               :
                        :    **O P I N I O N**
NELSON RODRIGUEZ, et al.,    :
                        :
            Defendants.    :
_____ :

**APPEARANCES:**

    THOMAS DONALD ELLIS, Plaintiff, pro se
    # 30914
    Bergen County Jail
    160 South River Street
    Hackensack, New Jersey 07601

**LINARES**, District Judge

    Plaintiff, Thomas Donald Ellis, confined at the Bergen
County Jail in Hackensack, New Jersey at the time this action was
submitted for filing, seeks to bring this action in forma
pauperis pursuant to 28 U.S.C. § 1915.  Based on plaintiff's
affidavit of indigence, the Court grants the application to
proceed in forma pauperis and directs the Clerk of the Court to
file the Complaint without pre-payment of the filing fee.

    Having reviewed the Complaint to identify cognizable claims
pursuant to 28 U.S.C. § 1915(e)(2), the Court concludes that the
Complaint should proceed in part.

## I.   BACKGROUND

Plaintiff was a pretrial detainee confined at the Hudson County Jail at the time of the alleged incidents referenced in this Complaint.  He has since been convicted and sentenced, and is currently serving his prison term at Bergen County Jail.  He brings this civil rights action against the following Hudson County Jail ("HCJ") officials: Sgt. Nelson Rodriguez; Alice Whittfield; Sgt. Lazerous Bernavard; Tour Commander Captain Dave Matthews; Corrections Officer ("CO") Ellison Coy; CO Chris Garibaldi; CO Nodstrom; Classification Officer Thomas Callishchio; and Classification Officer Freddy Pentton. Plaintiff also asserts a claim against another HCJ inmate, Lamont Fredricks.  (Complaint, Caption, ¶¶ 4b-k).  The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review.

Defendants Rodriguez, Whittfield, Bernavard, and Fredricks conspired to, and did, commit a violent assault upon plaintiff. Specifically, on July 8, 2004, defendants Bernavard and Whittfield instructed plaintiff to go to the property room, where defendants Rodriguez and Fredricks waited to assault him.  When plaintiff entered the property room, Rodriguez ran toward plaintiff with a broomstick.  Plaintiff was wrestled and thrown to the ground, where the two defendants proceeded to punch and

2

kick him repeatedly.  Rodriguez told plaintiff that he would treat him like "Abner Louima" with the broomstick.

On July 14, 2004, Rodriguez instructed plaintiff to throw out the remains of Rodriguez's candy, unless plaintiff wanted some.  Plaintiff took some candy and commented, "Is this all the job perks have to offer?"  About 30 minutes later, Rodriguez returned to the area where plaintiff was cleaning and began to beat and punch him repeatedly, calling plaintiff an "ungrateful motherfucker."

That same evening, defendant CO Garibaldi verbally harassed plaintiff.  Garibaldi told him he was "fucked up" on "dope" like a female inmate who had just been booked.  Garibaldi also called plaintiff a "bum out there on the bricks."  Defendant CO Coy laughed as Garibaldi taunted plaintiff.

The next day, July 15, 2004, defendant CO Nodstrom came to the A-1 trailer, tossed plaintiff's bedding apart, searched his locker, and confiscated plaintiff's Walkman radio because plaintiff did not have a receipt for it.  Plaintiff alleges that the radio was given to him by another inmate.  No radios were confiscated from the other inmates.

Plaintiff was also removed from his work assignment on the 12-8 shift support service and re-assigned to the 4-12 shift as a receiver worker for the week of June 21, 2004.  He was uncomfortable working in the receiving area because of past

3

verbal "abuse."[1]   Defendant Capt. Dave Matthews later had plaintiff removed from the trailer and fired from the receiver worker job for no reason; however, CO Nodstrom used the confiscation of the Walkman radio as an excuse to have plaintiff moved.   Plaintiff contends that the removal from the receiver worker position was racial discrimination and harassment.

Plaintiff seeks an unspecified amount of monetary punitive damages from the defendants.   (Compl. ¶ 7.)


## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, where the plaintiff is proceeding in forma pauperis.   28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.   Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).   The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

---

[1]   On several occasions, defendant CO Coy would clench his fists and hold them to plaintiff's ribs.   He also called plaintiff a "convict', a "piece of shit", and a "dope head".

in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should

permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. **SECTION 1983 LIABILITY**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1985 alleging violations of his constitutional rights under the Fifth and Fourteenth Amendments.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).


## IV.   ANALYSIS

Plaintiff alleges the following claims: (1) excessive force and failure to protect; (2) a state law claim of assault; (3) harassment; (4) deprivation of property; and (5) racial discrimination.

A.   Excessive Force and Failure to Protect Claims

Excessive force cases fall into three categories:  (1) those involving the use of force to effectuate an arrest; (2) those against a person in police custody and/or pretrial detention; and (3) those involving the use of force against a convicted person. Graham v. Connor, 490 U.S. 386, 394 (1989).  The Fourth Amendment standard is applied to those cases specifically directed to the method of arrest and seizure.  Custody and detention cases are subject to the Fourteenth Amendment substantive due process analysis; and cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment.  Id. at 392-394.  As a pretrial detainee at the time of the incident, plaintiff's excessive force claim is examined under the Fourteenth Amendment's substantive due process standard.

7

"A detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  Bell v. Wolfish, 441 U.S. 520, 535 (1979).  However, there exists a minimum degree of "punishment" which must be exceeded before a constitutional violation may be found; "de minimis" punishment does not offend the Constitution.  Id. at 539 n. 21.

In Bell, the Supreme Court set forth the standard to be applied in analyzing whether a detainee has been deprived of liberty without due process:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction

8

> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees <u>qua</u>
> detainees.

441 U.S. at 535-39 (citations omitted); <u>see also</u> <u>Fuentes</u>, 206
F.3d at 341-42.  The Supreme Court further explained that the
government has legitimate interests that stem from its need to
maintain security and order at the detention facility.
"Restraints that are reasonably related to the institution's
interest in maintaining jail security do not, without more,
constitute unconstitutional punishment, even if they are
discomforting and are restrictions that the detainee would not
have experienced had he been released while awaiting trial." <u>Id</u>.
at 540.  Retribution and deterrence, however, are not legitimate
nonpunitive governmental objectives. <u>Id</u>. at 539 n.20.  Nor are
grossly exaggerated responses to genuine security considerations.
<u>Id.</u> at 539 n.20, 561-62.

Under this standard, plaintiff appears to have adequately
alleged that defendant Sgt. Rodriguez, in concert with inmate
Fredricks, used excessive force against him in violation of his
constitutional rights under the Due Process Clause of the
Fourteenth Amendment.  The allegations plainly imply that
defendants' action in assaulting plaintiff in the manner alleged
was meant to "punish" him.  Plaintiff contends that he did
nothing to provoke or warrant the assault.  He was not, according

9

to him, resisting or defying any correctional officers or any of the disciplinary rules of the jail when the defendants attacked him.  Under these circumstances, if true, plaintiff may be able to demonstrate that the defendants' assaults on July 8 and 14, 2004 represented either a grossly exaggerated response to security needs, see Bell, 441 U.S. at 539 n.20, 561-62, or outright unprovoked violence.[2]

Moreover, it may be said that the alleged ferocity of the beatings suffered by plaintiff was likely to cause more than a *de minimis* injury.  This is a factual question that is not amenable to summary disposition at this early stage of litigation.  Therefore, plaintiff's excessive force claim, based on the Due Process Clause of the Fourteenth Amendment, will be allowed to proceed.

Plaintiff also asserts that defendants Whittfield and Sgt. Bernavard conspired with Sgt. Rodriguez and allowed the July 8, 2004 assault to occur.  Although these defendants did not actually take part in the actual beating of plaintiff, the allegations may be construed as a claim that these defendants had knowledge of the intended assault and failed to protect plaintiff

---

[2]   The Court notes that inmate Fredricks is not a state actor; however, plaintiff alleges facts to suggest that Fredricks was acting as an agent for Sgt. Rodriguez.  Therefore, the Court will allow the excessive force claim to proceed as against both Rodriguez and Fredricks at this early stage of litigation.

in violation of his due process rights under the Fourteenth
Amendment.

In the context of a failure-to-protect claim, the inmate
must show that he is "incarcerated under conditions posing a
substantial risk of harm," Farmer v. Brennan, 511 U.S. 825, 833
(1994), and that the defendant prison officials knew of and
disregarded the excessive risk to inmate safety, id. at 837.  "A
pervasive risk of harm may not ordinarily be shown by pointing to
a single incident or isolated incidents, but it may be
established by much less than proof of a reign of violence and
terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).
"Whether ... prison official[s] had the requisite knowledge of a
substantial risk is a question of fact subject to demonstration
in the usual ways, including inference from circumstantial
evidence, and a fact finder may conclude that ... prison
official[s] knew of a substantial risk from the very fact that
the risk was obvious." Farmer, 511 U.S. at 842.  Deliberate
indifference is more than a mere lack of ordinary due care,
however; it is a state of mind equivalent to a reckless disregard
of a known risk of harm.  Id. at 834.

Applying Farmer to the instant action, the first question is
whether plaintiff has alleged facts showing that he faced a
substantial risk of assault.  The second question is whether
plaintiff has alleged facts from which it could be inferred that

11

defendants, Whittfield and Bernavard, were aware of and disregarded that risk.

The allegations in the Complaint state that these defendants knew and conspired with Sgt. Rodriguez, allowed the assault to occur, and made no effort to intervene or stop the gratuitous assault.  These facts, if true, may be sufficient to show both knowledge of the risk and deliberate indifference.  Therefore, the Court will allow the conspiracy/failure to protect claim, as asserted against defendants Whittfield and Bernavard, to proceed past the screening stage.

B.  <u>State Law Claim of Assault</u>

Plaintiff also appears to assert a common law assault claim against Sgt. Rodriguez and inmate Fredricks with respect to the assault incidents of July 8 and 14, 2004.  There is no original jurisdiction over this claim because diversity between the parties under 28 U.S.C. § 1332(a) does not exist.  However, even if there is no original jurisdiction based on diversity of citizenship, the Court would be inclined to grant supplemental jurisdiction over the state law assault and battery claim, pursuant to 28 U.S.C. § 1367(a), because the claim is related to the excessive force claim over which the Court has original jurisdiction under 42 U.S.C. § 1983.  Therefore, this claim will be allowed to proceed past the screening stage.

12

C.  Verbal Harassment

   Next, plaintiff alleges that he was subjected to verbal
harassment and racial slurs.  These incidents of harassment
occurred on July 14, 2004 and other occasions and were committed
by defendants CO Garibaldi and CO Coy.

   "Intentional harassment of even the most hardened criminals
cannot be tolerated by a civilized society."  Hudson v. Palmer,
469 U.S. 517, 528 (1984).  Generally, mere verbal harassment does
not give rise to a constitutional violation.  See McBride v.
Deer, 240 F.3d 1287, 1291 (10th Cir. 2001)(taunts and threats are
not an Eighth Amendment violation);  Oltarzewski v. Ruggiero, 830
F.2d 136 (9th Cir. 1987); Rivera v. Goord, 119 F. Supp.2d 327,
342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's
constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822
F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383
(E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J.
1988).  Racially discriminatory statements, racial slurs and
epithets, without more, also do not establish liability under §
1983.  See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir.
1997)(verbal abuse directed at religious and ethnic background
does not state a cognizable constitutional violation); Black
Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz
v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even
a suggestion of physical injury, [defendants'] verbal abuse and

13

racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct")[3]; Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Association, 822 F. Supp. at 187-189 & n.3 (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y.), aff'd., 891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir. 1988). Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983.

---

[3]     The district court in Shabazz found that plaintiff's verbal harassment claim under the substantive component of the Fourteenth Amendment's guarantee of due process also fails.  The Supreme Court has recognized two alternative theories by which a claim for denial of substantive due process is tested.  The first theory involves "conscience shocking" behavior.  Shabazz, 69 F. Supp. 2d at 200.  The threshold for alleging a verbal harassment claim under the conscience shocking behavior theory is very high. Moreover, "[e]xtending the substantive component of due process to prohibit verbal abuse between inmates and prison officials would involve courts in the day to day operations of prisons, [citation omitted], and weaken the deference due prison officials in maintaining security."  Id. at 200.  Thus, in the instant case, where plaintiff does not allege physical injury, the verbal abuse and racial slurs fall far short of conscience shocking behavior, especially where he alleges only a few and isolated incidents.  See id.

    Under the second theory, plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause.  Fear or emotional injury alone resulting from alleged verbal abuse will not be sufficient to constitute a violation of an identified liberty interest. Shabazz, 69 F. Supp.2d at 200.  Consequently, plaintiff's verbal harassment claim, even if examined as a substantive due process violation, fails to state a claim upon which relief may be granted.

Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (defendant
laughed at prisoner and threatened to hang him).  However,
threatening language coupled with the threatening use of a weapon
and outrageous conduct by prison personnel may indicate a
constitutional deprivation.  Douglas, 684 F. Supp. at 398 (the
court determined that brandishing a butcher knife in close
proximity to prisoner and threatening to kill him may amount to a
constitutional violation); see also Northington v. Jackson, 973
F.2d 1518 (10th Cir. 1992) (gun was put to prisoner's head);
Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986)(guard
threatened to shoot prisoner).

In the instant action, plaintiff alleges little more than
simple verbal abuse and harassment by CO Garibaldi and CO Coy.
There are no allegations of actual physical threats coupled with
these derogatory remarks and harassment; nor does plaintiff claim
that the harassing conduct occurred over a long period of time,
or that physical injury occurred as a result of the racially-
based or otherwise belligerent remarks.  Therefore, this claim
will be dismissed for failure to state a claim.


D.   Deprivation of Property Claim

1.  *Loss of Radio*

Plaintiff also alleges a loss of property claim with respect
to the confiscation of his radio, which he appears to assert as a

violation of his constitutional right to due process.  An inmate
may be able to establish an unconstitutional deprivation of
property by showing confiscation of materials either in
retaliation for the exercise of constitutional rights or where,
as a result, there was a denial of access to the courts.  See
Hodgin v. Agents of Montgomery County, 619 F. Supp. 1550, 1553-54
(E.D. Pa. 1985).  Absent proof of retaliation or denial of
access, which have not been alleged in this action, plaintiff
must demonstrate that the loss of his radio amounted to a
violation of procedural due process.

    The Due Process Clause prohibits a state or local government
entity from depriving a person of property without due process of
law.  Greenholtz v. Inmates of Nebraska Penal and Correctional
Complex, 442 U.S. 1, 7 (1979).  To analyze a due process claim, a
Court conducts a familiar two-part inquiry:  a Court determines
whether the plaintiff "was deprived of a protected interest, and,
if so, what process was his due."  Logan v. Zimmerman Brush Co.,
455 U.S. 422, 428 (1982); see also Holman v. Hilton, 712 F.2d
854, 858 (3d Cir. 1983).

    Property loss caused by the intentional acts of government
officials does not give rise to a procedural due process claim
under § 1983 where a post-deprivation remedy satisfying minimum
procedural due process requirements is available under state law.
See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on

other grounds by <u>Daniels v. Williams</u>, 474 U.S. 327 (1986)); <u>see also</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 115 (1990); <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984); <u>Holman</u>, 712 F.2d at 856.[4]  The New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 <u>et seq.</u>, provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.  In this case, plaintiff's recourse after his radio was confiscated would be a common-law tort action against the defendant under the New Jersey Tort Claims Act, N.J. STAT. ANN. §§ 59:1-1 <u>et</u> <u>seq</u>.  Plaintiff does not indicate that he attempted to file a claim pursuant to the New Jersey Tort Claims Act.

     Accordingly, the Court finds that the NJTCA was available to plaintiff as a matter of law as a remedy for his alleged property loss at the hands of the defendants.[5]  See <u>Holman</u>, 712 F.2d at

---

     [4]  In <u>Logan</u>, however, the Supreme Court explained that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. 455 U.S. at 435-36.  <u>But see</u> <u>Tillman v. Lebanon Co. Correctional Facility</u>, 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (citing <u>United States v. James Daniel Good Real Property</u>, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).  There is nothing in the Complaint to suggest that loss of plaintiff's property was accomplished pursuant to established state procedure; nor has this Court located any such established procedure.

     [5]  Plaintiff's due process claim fails as a matter of law even if he is presently barred from pursuing his claims under the NJTCA on the ground that he failed to file a tort claim notice

857; <u>Asquith v. Volunteers of America</u>, 1 F. Supp.2d 405, 419 (D.N.J. 1998), <u>aff'd</u> 186 F.3d 407 (3d Cir. 1999).  Because the NJTCA provided all the process that was due for plaintiff's alleged property loss, plaintiff's loss of property claim should be dismissed for failure to state a claim upon which relief may be granted.

    2.  *Loss of Prison Job*

    Plaintiff also complains that he lost his job based on racial discrimination.  He alleges, however, that the radio incident was used as a pretext for moving him from his trailer and losing his job.  The radio had belonged to another inmate and plaintiff was unable to show a receipt for it.

    Courts have consistently recognized that an inmate has no constitutionally protected right to either a prison job or a particular prison wage or grade pay status.  <u>See</u> <u>Bulger v. United States Bureau of Prisons</u>, 65 F.3d 48, 49 (5th Cir. 1995); <u>Garza v. Miller</u>, 688 F.2d 480 (7th Cir. 1982), <u>cert</u>. <u>denied</u>, 459 U.S. 1150 (1983); <u>Gladson v. Henman</u>, 814 F. Supp. 46, 47 (D. Kan.), <u>aff'd</u>, 13 F.3d 405 (10th Cir. 1993); <u>Salahuddin v. Coughlin</u>, 674 F. Supp. 1048, 1054 (S.D.N.Y. 1987).

    Thus, plaintiff cannot show that a property interest in his jail job assignment is recognized or protected by federal law to

---

within 90 days of accrual of the claim, as required by N.J. STAT. ANN. §§ 59:8-1 to 59:8-11.  <u>See</u> <u>Logan</u>, 455 U.S. at 437; <u>Holman</u>, 712 F.2d at 857 & n.3.

obtain due process protection under the Fourteenth Amendment.
See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577
(1972)(protected property interests "stem from an independent
source, such as state law--rules or understandings that secure
certain benefits and support claims of entitlement to those
benefits"); Bulger, 65 F.3d at 50 (finding no property interest
in inmate UNICOR job assignments); Salahuddin, 674 F. Supp. at
1054 (transferred inmate did not have "legitimate claim of
entitlement" of retaining same wage grade from one facility to
another and hence had no due process right to either notice or
hearing before wage grade was reduced following transfer).

Because plaintiff cannot demonstrate a protected liberty
interest or property interest in his prison job sufficient to
trigger constitutional due process, this claim will be dismissed
for failure to state a cognizable claim.


E.  Racial Discrimination

Finally, plaintiff asserts a claim of racial discrimination
in violation of his Fourteenth Amendment rights with respect to
the loss of his jail job assignment.  He claims that two other
African Americans were fired by Sgt. Matthews before plaintiff.

The Equal Protection Clause protects prisoners from
arbitrary racial discrimination.  Turner v. Safley, 482 U.S. 78,
84 (1987); Lee v. Washington, 390 U.S. 333 (1968).  Nevertheless,

a court's review of prison policies and actions is tempered by recognition that lawful incarceration necessarily limits many privileges and rights and that courts are ill-equipped to deal with many problems of prison administration. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987); Turner, 482 U.S. at 84-85 (1987). Thus, an inmate's constitutional rights are subject to restrictions that are "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

To determine the constitutionality of a prison policy, a court must weigh four factors:

> "First, there must be a 'valid, rational connection'
> between the prison regulation and the legitimate
> governmental interest put forward to justify it," and
> this connection must not be "so remote as to render the
> policy arbitrary or irrational." Second, a court must
> consider whether inmates retain alternative means of
> exercising the circumscribed right. Third, a court
> must take into account the costs that accommodating the
> right would impose on other inmates, guards, and prison
> resources generally. And fourth, a court must consider
> whether there are alternatives to the regulation that
> "fully accommodate[] the prisoner's rights at de
> minimis cost to valid penological interests."

Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999) (quoting Turner, 482 U.S. at 89-91) (other internal citations omitted). See also DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). This analysis applies to inmate equal protection claims. See DeHart, 227 F.3d at 61.

Under this standard, plaintiff's allegations could support an equal protection claim because he states that his firing was

20

based, at least in part, upon his race, and he claims that this
is supported by the fact that two other African Americans were
fired by defendant.  Nevertheless, as mentioned in Section D2
above, plaintiff does not have a cognizable liberty interest in a
prison work assignment.  Moreover, plaintiff has admitted that
his firing was based on his possession of a radio to which he
could not prove ownership.  Thus, there is a valid, rational
connection between the action taken by defendant and the
legitimate governmental interest in jail security with respect to
inmates working in the receiving area.  Further, plaintiff is no
longer incarcerated at HCJ and the loss of his prison job was
only temporary.  There is no allegation that he was denied all
work assignments.   Thus, it appears that the loss of plaintiff's
job, even if partly motivated by racial animus, was a temporary
*de minimis* injury far outweighed by legitimate penological
concerns at HCJ.  The Court will dismiss the equal protection
claim on the ground that plaintiff has failed to show a protected
liberty interest in his work assignment, and that the admitted
allegations in the Complaint show that the action by defendant
was reasonably related to jail security and administration.

### V.  CONCLUSION

For the reasons stated above, the Court will dismiss
plaintiff's claims asserting harassment, racial discrimination,

21

and deprivation of property, for failure to state a claim, as against defendants, Matthews, Coy, Garibaldi, Nodstrom, Callishchio, and Pentton.  The remaining claims alleging excessive force, failure to protect, and the common law claim of assault, as asserted against defendants, Rodriguez, Whittfield, Bernavard, and Fredricks, will be allowed to proceed.  An appropriate Order follows.


DATED: JUNE 21, 2005                    /s/ JOSE L. LINARES
                                        United States District Judge